DEBRA G. FRAZIER, EMPLOYEE, PLAINTIFF v. McDONALD'S, EMPLOYER, WAUSAU INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA01-457

(Filed 16 April 2002)

**1. Workers' Compensation— temporary partial disability— failure to show termination for misconduct or fault unrelated to compensable injury**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee was entitled to temporary partial disability even though defendants contend

plaintiff's current inability to work is not related to her work injury but due to the fact that she violated the cash drawer policy of the employer and was terminated, because there is competent evidence in the record to support the Commission's finding and conclusion that defendants failed to show that plaintiff's termination was for misconduct or fault, unrelated to her compensable injury for which a nondisabled employee would ordinarily have been terminated.

## 2. Workers' Compensation— permanent and total disability— earning capacity

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff employee was entitled to permanent and total disability under N.C.G.S. § 97-29 based on plaintiff's alleged incapacity to earn wages as a direct and natural consequence of her work-related accident on 1 January 1998, because: (1) plaintiff failed to show her incapacity to earn wages was a result of her injury on 1 January 1998 when two doctors concluded plaintiff had reached maximum medical improvement as of 15 June 1998 and that her capacity to earn wages now is greater than it was prior to the accident; (2) plaintiff did not stop working for defendant based on the fact that she was physically incapable of performing her job, but instead based on defendant's termination of her employment; (3) plaintiff testified that she did not seek other employment after defendant terminated her and failed to show that she was incapable of earning wages in any other employment; and (4) although there was some evidence that the accident may have aggravated plaintiff's pre-existing condition, all the evidence shows that plaintiff is not totally incapable of earning wages.

## 3. Workers' Compensation— injury—direct and natural consequence of injury by accident

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff's post 15 June 1998 injuries were a direct and natural consequence of her 1 January 1998 injury by accident, because a doctor testified that: (1) plaintiff would have eventually had knee buckling problems even if she never had the compensable injury on 1 January 1998; (2) the two primary causes of plaintiff's knee pain and weakness were her two patellectomies and degenerative arthritis in her knees; (3) it was equally likely that plaintiff's subsequent falls would have occurred in the absence of her compensable fall; and (4) the

doctor had no way of knowing with any certainty whether plaintiff's pre-existing conditions, or which of the various falls she experienced, caused her knee buckling problems after 15 June 1998.

**4. Workers' Compensation— temporary partial disability compensation—unpaid portions**

Although the Industrial Commission did not err in a workers' compensation case by concluding defendants shall pay all unpaid portions of the temporary partial disability compensation, the case is remanded for a determination of the remaining amounts owed from temporary partial disability compensation, if any.

**5. Workers' Compensation— attorney fees—costs**

Although the Industrial Commission did not err in a workers' compensation case by awarding reasonable attorney fees and costs, the case is remanded for a determination of the proper amount of attorney fees and costs in light of the Court of Appeals' holding.

Appeal by defendants from the North Carolina Industrial Commission's ("Commission") opinion and award entered 26 January 2001. Heard in the Court of Appeals 22 January 2002.

*Raymond M. Marshall, for plaintiff-appellee.*

*Orbock Bowden Ruark & Dillard, PC, by Barbara E. Ruark and Stephanie Britt Woods, for defendants-appellants.*

TYSON, Judge.

McDonald's (individually "defendant") and Wausau Insurance Company (collectively "defendants") appeal from the Commission's opinion and award, which awarded Debra Frazier ("plaintiff") (1) ongoing total disability compensation, (2) all unpaid portions of temporary partial disability compensation, (3) all medical expenses, and (4) reasonable attorney fees and costs. We affirm the Commission's opinion and award in part and reverse and remand in part.

## I. Facts

Defendant employed plaintiff as a cashier during May of 1997. Plaintiff suffered from a pre-existing knee condition. In 1974, plaintiff underwent "patellectomy" surgery to remove both her kneecaps. Plaintiff experienced various knee-related problems and surgeries

subsequent to 1974, including episodes of falling, oftentimes sustaining additional injuries.

Evidence in the record shows that patients who experienced patellectomies suffer from (1) pain and weakness in their knees, (2) a "buckling sensation", (3) falls as a result of buckling and collapsing of the knee, and (4) "degenerative arthritis," which exacerbates all symptoms. The evidence indicates that plaintiff has fallen many times injuring her knees, ankles, shoulder, and back prior to beginning employment with defendant. The evidence also shows that plaintiff has fallen many times after defendant terminated her employment. Dr. Walton Curl ("Dr. Curl"), plaintiff's orthopedic surgeon, testified that each injury to her knees aggravates her preexisting knee condition.

Plaintiff is forty-four years old and obese. Plaintiff testified that prior to beginning work for defendant, she experienced swelling in her knee, discomfort, and knee buckling problems.

In February of 1997, Dr. Curl informed plaintiff that she would be disabled for the next six months due to knee problems. Dr. Curl testified in his deposition that plaintiff should not have been working during that six month period. Dr. Curl further testified that plaintiff was completely disabled and could not work from August 1993 until August 1997 as a result of her pre-existing condition. Despite this diagnosis, plaintiff accepted employment with defendant in May 1997. Plaintiff testified that she continued to experience discomfort in her knee after she started to work for defendant, but that she "tolerated it."

Plaintiff continued to see Dr. Curl off and on throughout 1997, including a visit on 8 July 1997 for knee pain stemming from her preexisting condition and aggravation from having mis-stepped into a hole and fallen prior to beginning employment with defendant. Plaintiff testified that she was complaining about increased pain and stiffness in her right knee.

Plaintiff fell while working for defendant on 2 August 1997. On 6 August 1997, plaintiff saw Dr. Curl complaining of neck, low back and right knee pain. Dr. Curl noted that plaintiff had advanced degeneration in her right knee with some valgus deformity. Dr. Curl saw plaintiff again on 29 October 1997 and placed permanent work restrictions of "no bending, stooping, climbing, or lifting over fifteen pounds. Patient may return as cashier." It is unclear from

the record if Dr. Curl restricted plaintiff to four or eight hours per day at that time.

Plaintiff again fell and aggravated her right knee and injured her neck on 1 January 1998 while at work. This injury is at issue on appeal. Dr. Curl examined plaintiff, and he concluded that she sustained a "contusion or a bruise to her right knee and a right neck strain" as a result of the 1 January 1998 fall at work. Plaintiff was currently attending physical therapy. Dr. Curl "told her to continue with physical therapy for her right knee and her neck with heat and ultrasound . . . rehabilitation."

Defendants paid plaintiff temporary total disability until plaintiff returned to work on 12 February 1998, part-time with work restrictions per Dr. Curl's instructions. Defendants' payments were made pursuant to Form 63, Notice to Employee of Payment of Compensation without Prejudice to Later Deny the Claim Pursuant to N.C. Gen. Stat. § 97-18(d), which defendants had signed on 23 January 1998. (See Shah v. Howard Johnson, 140 N.C. App. 58, 535 S.E.2d 577 (2000) for the implications and proper use of Form 63.) Plaintiff's work restrictions were the same as those in October of 1997, with the exception that plaintiff was not to work more than 4 hours per day. Plaintiff testified that she worked "about thirty-something" hours per week at that time. Defendants then paid plaintiff temporary partial disability compensation based on her reduced earning capacity.

Plaintiff was terminated on 11 March 1998 after her cash register drawer was short by $44.83. Defendants continued to pay plaintiff partial disability compensation. Plaintiff testified that she has not sought employment after she was terminated. Plaintiff also testified that she had received a "certificate from community college" when she "went to school to be [a] nurse . . . [and that she] worked at Winston-Salem Convalescent Center." She worked as a "sitter" with "patients that needs [sic] someone to be in the room with them."

On or about 18 July 1998, defendants filed a Form 24, Application to Terminate or Suspend Payment of Compensation Pursuant to N.C. Gen. Stat. § 97-18.1. The claim was assigned for hearing on 3 September 1998. The case was heard by Deputy Commissioner Morgan S. Chapman ("Deputy Chapman") on 6 April 1999. Deputy Chapman filed an opinion and award on 14 December 1999. The award granted plaintiff compensation for (1) temporary partial disability from 11 March 1998 through 15 June 1998 pursuant to 97-29 and 97-30, subject to a credit for compensation previously paid by

defendants, (2) permanent partial disability pursuant to 97-31(13) and (19) for a one percent permanent partial disability rating to her right arm at a rate of $131.82 per week for 2.4 weeks, (3) all of plaintiff's medical expenses that resulted from the compensable injury, and (4) costs.

Plaintiff filed her notice of appeal to the Commission on 17 December 1999. The Commission reconsidered the evidence, reversed Deputy Chapman's opinion and award, and filed a new opinion and award on 26 January 2001. The Commission's award granted plaintiff (1) ongoing total disability compensation of $131.82 per week for the period 11 March 1998 until she returns to work or until further order of the Commission pursuant to G.S. § 97-29, (2) all unpaid portions of the temporary partial disability compensation to which she is entitled, (3) all medical expenses, and (4) reasonable attorney fees and costs. Defendants appeal.

## II. Issues

Defendants assign nineteen errors to the Commission's opinion and award. Defendants argue in their brief two issues: (1) that plaintiff's current inability to work is not related to her work injury, and (2) that plaintiff's injuries after 15 June 1998 were not a direct consequence of her 1 January 1998 work injury. All other assignments raised but not argued are abandoned. N.C.R. App. P. 28(b)(5) (2001).

## III. Standard of Review

Our review of an opinion and award is limited to "whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." *Lineback v. Wake County Bd. of Comm'rs*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). The judgment of credibility of the witness and the weight to be given their testimony is entirely with the Commission. *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 255, 454 S.E.2d 704, 708 (1995) (citation omitted). Findings of fact are conclusive upon appeal if supported by competent evidence, even if there is evidence to support a contrary finding. *Morrison v. Burlington Indus.*, 304 N.C. 1, 282 S.E.2d 458 (1981). We cannot uphold the Commission's award if not supported by competent evidence. *Horn v. Sandhill Furniture Co.*, 245 N.C. 173, 176, 95 S.E.2d 521, 523 (1956).

FRAZIER v. McDONALD'S

[149 N.C. App. 745 (2002)]

## IV. Plaintiff's Inability to Work and Earning Capacity

### A. Termination

[1]. Defendants contend that "[p]laintiff is no longer able to work at McDonald's not as a result of her injury, but due to the fact that she violated the cash drawer policy of McDonald's," and was terminated. Defendants argue that plaintiff has constructively refused to accept suitable employment and is not entitled to benefits.

To substantiate their argument, defendants "must first show that the employee was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated." *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996).

The Commission found as fact that "[d]efendants have failed to produce credible evidence that plaintiff's termination on 11 March 1998 was for misconduct or fault for which a non-disabled employee would also have been terminated," and concluded that "plaintiff did not constructively refuse employment."

Plaintiff was reprimanded in writing for drawer shortages on two occasions prior to her compensable injury and prior to her termination. Plaintiff was given an "Employee Warning" written notice after her second shortage on 18 December 1997. Under "Action To Be Taken" on the notice, plaintiff's supervisor wrote: "the next time you are short, you will get a week off without pay." Billy Scales, a supervisor with McDonald's, testified that those words, written on plaintiff's "Employee Warning" notice, established the termination policy for plaintiff.

Plaintiff's drawer was again short $44.83 on 9 March 1998, after the 1 January 1998 compensable injury. Instead of being punished with a week off without pay, plaintiff's employment was terminated. Billy Scales testified that the fair response would have been to suspend plaintiff for one week rather than terminate her. We hold that there is competent evidence in the record to support the Commission's finding and conclusion that defendants failed to show that plaintiff's termination was for misconduct or fault, unrelated to her compensable injury, "for which a nondisabled employee would ordinarily have been terminated." *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401.

Plaintiff is therefore entitled to receive compensation for temporary partial disability from 11 March 1998 through 15 June 1998 as

set forth in the Commission's opinion and award. According to the award, plaintiff is entitled to "have defendants pay to her temporary partial disability at the rate of two-thirds difference between her former average weekly wage of $197.75 and the weekly wages she was able to earn from 10 February 1998 through 15 June 1998." Plaintiff was terminated on 9 March 1998. Defendants were unable to satisfy its burden that plaintiff constructively refused to work. Plaintiff did not earn wages from 11 March 1998 until 15 June 1998. Therefore, plaintiff is entitled to two-thirds of her former average weekly wage of $197.75 from 11 March 1998 until 15 June 1998. That portion of the Commission's opinion and award is affirmed. We remand for a proper determination of the remaining amounts owed, if any.

### B. Plaintiff's Earning Capacity

**[2]** Defendants contend that the Commission erred in its conclusion of law that plaintiff was entitled to "ongoing total disability." Defendants argue that no competent evidence exists in the record to show that plaintiff was incapable of earning wages as a direct and natural consequence of her 1 January 1998 accident. Defendants claim that competent evidence shows that plaintiff's wage earning capacity is greater now than it was from between August 1993 and August 1997.

The dispositive issue here is whether plaintiff is totally incapable of earning wages as a result of her 1 January 1998 injury. "Under the Workers' Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity." *Saums v. Raleigh Community Hosp.*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). To support a conclusion of diminished earning capacity, the plaintiff must prove and the Commission must find that: (1) after the injury plaintiff was incapable of earning the same wages earned before the injury in the same, or other employment, and (2) plaintiff's incapacity to earn wages was caused by the injury. *Saums*, at 346, 763, 487 S.E.2d 746, 749 (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)).

> A claimant who asserts that he is entitled to compensation under N.C. Gen. Stat. § 97-29 has the burden of proving that he is, as a result of the injury arising out of and in the course of his employment, totally unable to "earn wages which . . . [he] was receiving at the time [of injury] in the same or any other employment."

*Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (quoting *Tyndall v. Walter Kidde Co.*, 102 N.C. App.

726, 730, 403 S.E.2d 548, 550, *disc. rev. denied*, 329 N.C. 505, 407 S.E.2d 553 (1991)). The Workers' Compensation Act "was never intended to provide the equivalent of general accident or health insurance." *Vause v. Vause Farm Equip. Co.*, 233 N.C. 88, 92, 63 S.E.2d 173, 176 (1951).

After careful review of the entire record, we hold that no competent evidence exists upon which the Commission could have relied to support its finding of fact that plaintiff has no earning capacity as a direct result of plaintiff's 1 January 1998 injury.

The Commission made the following finding of fact:

23. As the result of her 1 January 1998 injury by accident and related conditions, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment from 11 March 1998 through the present and continuing.

The Commission concluded that "plaintiff is entitled to have defendants pay to her ongoing total disability compensation . . . for the period of 11 March 1998 through the present and continuing until such time as she returns to work or until further order of the Commission. G.S § 97-29." The competent evidence in the record, considered as a whole and viewed in the light most favorable to the plaintiff, proves otherwise.

First, plaintiff failed to show her incapacity to earn wages was a result of her injury on 1 January 1998. Dr. Curl testified that plaintiff had severe and continuing problems with her knee buckling before the 1 January 1998 accident. Dr. Curl testified that plaintiff was completely disabled and unable to work from August 1993 until August 1997. Dr. Curl also testified that during that period plaintiff should not have been working.

Dr. Curl testified that plaintiff had a permanent partial disability rating prior to the 1 January 1998 accident based on her pre-existing condition. Dr. Curl also testified that "I don't think that I intended to raise her permanent partial disability rating above what she already had . . ." as a result of plaintiff's 1 January 1998 accident. Dr. Curl further testified that on 29 October 1997, before her 1 January 1998 accident, he placed permanent restrictions on plaintiff's ability to work: "no bending, stooping, climbing, or lifting over fifteen pounds. Patient may return as cashier." Dr. Curl testified that the work restrictions he had given plaintiff remained in effect when he saw her on 25

March 1998, and that the restrictions, with respect to her knee, had not changed.

Dr. Walter Davis ("Dr. Davis"), who specializes in workers' compensation cases and occupational injuries, issued a report about plaintiff's condition on 19 May 1998. Dr. Curl summarized that report and testified as to what Dr. Davis had concluded. In May of 1998, Dr. Davis refused to administer a new "functional capacity evaluation" as requested by Dr. Curl. Dr. Curl testified that Dr. Davis had opined that "since she had had a prior FCE . . . and that her condition at this time was about the same as what she'd had prior to her fall, that he did not think a new functional capacity evaluation would add anything to her assessment." Dr. Davis "released [plaintiff] to work eight hours a day, forty hours a week at light physical demand classification [work] . . . ." Dr. Davis and Dr. Curl both concluded that plaintiff had reached maximum medical improvement as of 15 June 1998.

Dr. Curl was asked by plaintiff's counsel "given that she had a pre-existing condition in her right knee, do you believe the fall [of 1 January 1998] caused an acceleration of that degenerative process to occur." Dr. Curl responded "[n]o I think it just aggravated it. I don't think it necessarily accelerated the process." Dr. Curl testified that while the 1 January 1998 accident "may have aggravated [plaintiff's] pre-existing condition, it hasn't necessarily aggravated her capacity to earn wages." Dr. Curl agreed that plaintiff's capacity to earn wages "now" is greater than it was prior to the accident.

Second, plaintiff did not stop working for defendant because she was physically incapable of performing the job. She stopped because defendant terminated her employment. There is no evidence in the record that plaintiff was unable to work for defendant, under the same work restrictions, had she not been terminated.

Third, plaintiff testified that she did not seek other employment after defendant terminated her. Plaintiff failed to show that she was incapable of earning wages in any other employment. She testified that she has a nursing certificate, and that she once worked as a "sitter" in patients' rooms. This evidence suggests that nurse "sitting" would satisfy Dr. Curl's and Dr. Davis' work restrictions.

Although there was some evidence that the 1 January 1998 accident may have aggravated her pre-existing condition, all the evidence shows that plaintiff is not totally incapable of earning wages. The

competent evidence shows that after 15 June 1998, plaintiff's wage earning capacity was greater than or equal to that prior to 1 January 1998.

Accordingly, no finding of fact supports the Commission's conclusion of law that plaintiff is entitled to permanent and total disability pursuant to G.S. § 97-29.

## V.  Plaintiff's Injuries After 15 June 1998

[3] Defendants contend that "while the fall [compensable injury] may have aggravated plaintiff's condition symptomatically it did not aggravate the underlying condition of her knee," and that plaintiff's injuries after 15 June 1998 were not a "direct and natural consequence of her January 1, 1998 accident." We agree.

"In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986); *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684. One way plaintiff may meet this burden is by "the production of medical evidence that [she] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment . . . ." *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted) (emphasis supplied).

The Commission found as fact and concluded that plaintiff's injuries sustained as a result of her 29 July 1998 and 9 September 1998 incidents were a "direct and natural consequence of her 1 January 1998 injury by accident." We do not find any competent evidence in the record to support this finding or conclusion.

Dr. Curl testified that plaintiff would have eventually had knee "buckling" problems even if she never had the compensable injury on 1 January 1998. Dr. Curl also testified that the two primary causes of plaintiff's knee pain and weakness were her (1) two patellectomies and (2) degenerative arthritis in her knees. Dr. Curl was asked "is it equally likely that [plaintiff's subsequent falls after 15 June 1998] would have occurred in the absence of the fall at McDonald's in . . . January of '98?" He responded affirmatively. Dr. Curl further testified that he had no way of knowing with any certainty whether plaintiff's pre-existing conditions, or which of the various falls she experienced, caused her knee buckling problems after 15 June 1998.

We thoroughly reviewed the entire record and hold that there is no competent evidence in the record to support the Commission's finding of fact and conclusion of law that plaintiff's post 15 June 1998 injuries were a direct and natural consequence of her 1 January 1998 compensable work injury.

## VI. Conclusion

**[4],[5]** We affirm that portion of the award that defendants "shall pay all unpaid portions of the temporary partial disability compensation . . . ." We also affirm the award for reasonable attorney's fees and costs. We remand for a determination of the proper amount of attorney's fees and costs in light of our holding, and for a determination of the remaining amounts owed from temporary partial disability compensation, if any. We reverse the Commission's award for ongoing total disability compensation.

We affirm the opinion and award in part and reverse and remand in part.

Affirmed in part, reversed in part and remanded.

Judges GREENE and HUNTER concur.