***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. After reconsideration of the evidence, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, which has jurisdiction of the parties and the subject matter of this action. *Page 2 
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. On or about January 25, 2006, defendant-employer regularly employed three or more employees, and it and its employees were subject to and bound by the provisions of the Workers' Compensation Act.
4. An employer-employee relationship existed between plaintiff and defendant on or about January 25, 2006.
5. On or about January 25, 2006, AEGIS Administrative Services was the third party administrator for self-insured defendant-employer.
6. On or about January 25, 2006, plaintiff was employed by defendant earning an average weekly wage to be determined by the Form 22, by stipulation of the parties, or from other wage information provided by the respective parties.
7. Plaintiff alleges that she sustained a specific traumatic incident arising out of and in the course of her employment with defendant-employer, said accident resulting in an injury to both of her knees and legs and her back.
8. Defendant initiated payment of compensation for temporary total disability benefits at the rate of $730.00 per week commencing February 15, 2006, on a Form 63 dated February 15, 2006. Defendant reinstated payment of compensation on February 24, 2006 and again on March 3, 2006, pursuant to Form 62's dated March 9, 2006. Defendant continues to pay plaintiff temporary total disability benefits to the present time.
The parties also stipulated to the following records:
 (a) All Industrial Commission forms and pleadings, marked Stipulated Exhibit 2; *Page 3 
 (b) A packet of stipulated medical records marked Stipulated Exhibit 3 and containing the records of Dr. Vaughn, Dr. Busher, Pitt County Memorial Hospital, Rex Hospital, Pitt County Memorial Hospital Occupational Health, NovaCare, Dr. Lassiter, Dr. Alloway, 3HC, and Dr. Harmon. After the hearing before the Deputy Commissioner, the parties stipulated to additional records from Dr. Vaughn that were provided after his deposition;
 (c) Plaintiff's Answers to defendant's Interrogatories and Requests for Production of Documents, marked Stipulated Exhibit 4; and
 (d) Records from Southern Rehab, marked Stipulated Exhibit 5.
Finally, the Full Commission takes judicial notice of the Full Commission's Opinion and Award in I.C. File No. 871585, a prior claim involving the same parties represented by the same counsel, and injury to the same part of the body.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the hearing before the Deputy Commissioner, plaintiff was 50 years of age. On or about January 25, 2006, she was employed by defendant as a nurse manager earning an average weekly wage sufficient to generate the maximum compensation rate for a 2006 injury.
2. For some time prior to January 25, 2006, plaintiff had been working under permanent work restrictions necessitated by her preexisting bilateral knee condition of degenerative joint disease and severe osteoarthritis. *Page 4 
3. With regard to plaintiff's preexisting right and left knee degenerative joint disease and severe osteoarthritis, the stipulated medical records going back to August 14, 1997 reveal that plaintiff had been seeing Dr. Helen Harmon, a rheumatologist, for complaints of bilateral knee pain. Dr. Harmon ordered x-rays, the results of which showed "evidence of progression in bilateral knees when compared with previous films dated 12-29-95." Plaintiff was seen again by Dr. Harmon on January 13, 1998 for "right knee pain secondary to flare of osteoarthritis" not associated with any reported trauma to the knee. On May 1, 1998, plaintiff returned to Dr. Harmon complaining of significant increased pain in the right knee with weight bearing. On January 6, 1999, Dr. Harmon opined that plaintiff would eventually need a left total knee replacement for what was described as moderate to advanced osteoarthritis. Dr. Harmon mentioned to plaintiff that her surgeon, Dr. Lassiter may be hesitant to perform a left total knee replacement given her significant problems with obesity.
4. Dr. Lassiter, an orthopedic surgeon, who had performed a partial medial meniscectomy on plaintiff's left knee on June 3, 1999, opined on May 31, 2000 that he had no further options for her short of total knee replacement, but that he would not recommend that because of plaintiff's age and size. The meniscectomy had disclosed what he described as "degenerative medial meniscal tear and grade IV arthritic changes to the medial compartment and patella." Dr. Lassiter recommended plaintiff investigate having gastric bypass surgery to help get her weight down "because the longevity of a total knee in someone like her would not be very good."
5. In March 2002, plaintiff underwent a left total knee replacement that was performed by Dr. Rockwell and paid for by her group health insurance. On December 16, 2003, *Page 5 
plaintiff underwent a right total knee replacement that was performed by Dr. Vaughn and was paid for by her group health insurance.
6. Following Dr. Vaughn's 2003 surgery on the right knee, plaintiff continued to complain of pain in the left knee, but according to the medical records she did not attribute it to altered gait due to the right knee surgery. Following the right total knee replacement, Dr. Vaughn released plaintiff to return to light duty work on February 24, 2004.
7. On December 13, 2004, plaintiff returned to Dr. Vaughn for her one-year post-operative visit on the right knee. Dr. Vaughn's note for that visit states that "[h]er left knee continues to be bothersome to her. She has had a total knee arthroplasty done elsewhere, and she has documented loosening."
8. On January 12, 2005, plaintiff was seen by Dr. Alloway, an orthopedic specialist, and reported to him that she was having pain on a daily basis in the left knee. Dr. Alloway's note from that visit indicates that plaintiff reported "significant pain in the knees . . . usually worse with activity and better with rest." Dr. Alloway commented that "obesity is, by far, her most significant problem," and that "she is probably going to have to have that left knee revised — she has a surgeon in Raleigh who will do this."
9. On or about January 25, 2006, while working for defendant as a nurse manager with permanent restrictions related to her preexisting bilateral knee condition, plaintiff sustained an injury to her right knee and low back when a chair in which she was about to sit slid out from under her, causing her to fall back in a crab-like position.
10. When plaintiff was seen in defendant's Occupational Health Department on January 30, 2006, she initially reported only low back pain, which was diagnosed as a lumbar sprain. She also advised that she had an appointment already scheduled with her orthopaedic *Page 6 
surgeon, Dr. Vaughn on February 2, 2006, for evaluation of her knee. When the "Employee Event Report" was completed on January 30, 2006, the back and right knee were checked for "Body Parts Injured."
11. When plaintiff reported to Dr. Vaughn on February 2, 2006 for her annual follow-up after her right total knee replacement, she told him about the fall at work the week before and reported that she had been having "exquisite pain" in her knee. Dr. Vaughn ordered an x-ray, the results of which revealed "aseptic loosening, right femoral component, caused by recent fall." In light of this diagnosis of a loosening of the right component that had not been diagnosed prior to the injury, defendant accepted liability for the injury to the right knee and authorized the right total knee revision that Dr. Vaughn performed on March 3, 2006. Defendant made light duty work available for plaintiff prior to the surgery, and initiated payment of temporary total disability benefits as of the date last worked prior to the surgery. When Dr. Vaughn recommended the surgery on February 2, 2006, he wrote a note indicating "estimated RTW date: 6-12 weeks post-operative."
12. When plaintiff returned to see Dr. Vaughn on April 10, 2006, she reported that her left knee was more bothersome. Dr. Vaughn's note from that visit states, "the right knee shows a previously documented aseptic loosening," but Dr. Vaughn testified at his deposition that this was a typographical error, that he was in fact referencing the previously documented left knee aseptic loosening. With regard to plaintiff's first report of left knee pain on April 10, 2006, Dr. Vaughn testified, "I know it's been symptomatic for a while." There was no mention in Dr. Vaughn's April 10, 2006 office note that the increasing left knee complaints were due to altered gait or increased load bearing due to the right knee surgery. In fact, when plaintiff returned to *Page 7 
see Dr. Vaughn on June 12, 2006, the note from that visit indicated twice that the surgery on the left knee would have been done had plaintiff not required the right knee surgery.
13. At the hearing before the Deputy Commissioner, plaintiff testified that she began experiencing additional left knee pain "soon after" she got up from the fall, while still in the meeting she was attending. However, she did not report left knee pain when she was seen in defendant's Occupational Health Department on January 30, 2006, and did not report the onset of worsening left knee pain when she presented to Dr. Vaughn on February 2, 2006. At no time during the course of her physical therapy at NovaCare following the right total knee revision did plaintiff report any problems with her left knee due to the January 25, 2006 injury, including no report of an altered gait or increased weight bearing.
14. With regard to increased weight bearing following the March 3, 2006 right knee revision, plaintiff testified at the hearing before the Deputy Commissioner, that during the first month following the surgery, she walked using a rolling walker to go to the bathroom on average four to six times a day. She did not have to do any cooking or housekeeping during this time because defendant was paying for a home health aide that Dr. Vaughn had recommended.
15. On August 9, 2006, plaintiff underwent left total knee revision surgery with Dr. Vaughn. This surgery and all related home health care and physical therapy were paid for by plaintiff's group health insurance, because defendant denied authorization for treatment of the left knee as being unrelated to the admittedly compensable right knee injury.
16. Following the left knee surgery, at her first post-op visit on September 18, 2006, plaintiff requested authorization to rent a scooter "for events such as the State Fair or a visit to the Biltmore Estate." Defendant refused to authorize a scooter, as it had not been recommended until after the unrelated left knee surgery, and also for the reasons plaintiff cited for wanting the *Page 8 
scooter. When asked at his deposition if he recalled the circumstances under which he wrote the note for the scooter in September 2006, Dr. Vaughn responded, "Not really." He went on to say later, "I have no print about the scooter. . . . This is something that I don't recall."
17. At the time of the hearing before the Deputy Commissioner, plaintiff remained out of work even though it had been more than one year since the right total knee revision. Even though Dr. Vaughn had released plaintiff to light duty work within three months of her prior right total knee surgery, and to full duty work within 8 months, when it came to workers' compensation, Dr. Vaughn testified, "I don't push people to go back to work. And I think for the record, I'm not a Workmen's [sic] Comp doctor." When asked by plaintiff's counsel on direct whether he anticipated plaintiff having to be out of work for one year, Dr. Vaughn stated,
 [G]etting back to work will, one, be dependant on how well they've done and then their motivation to get back to their job and how well their job will accommodate them to doing it. I might have said this to Roenell, I'm not going to be the one pushing you back to work. I'm not a Workmen's [sic] Comp doctor. It's irrelevant to me. This is about the knee and if you get back to work, great, okay? But that would basically be your decision.
18. At the hearing before the Deputy Commissioner, Amy Pearson, Administrator of Occupational Health at Pitt County Memorial Hospital, testified that after plaintiff's right total knee revision, she identified a light duty, sedentary position for plaintiff that would have paid her the same wages she was earning at the time of the injury and would not have required lifting over 16 pounds. Ms. Pearson also testified that the hospital would have permitted plaintiff to use a scooter at work, as it has allowed other workers, including those with non-work-related injuries, "in order to help our employees stay working."
19. Plaintiff further testified that in addition to having a home health aide that was paid for by workers' compensation (after the right knee surgery) and by group health (after the *Page 9 
left knee surgery), she also paid family members to assist her with various chores. However, she presented no records as to whom she paid or how much she paid them, and there does not appear to have been a recommendation by Dr. Vaughn for additional assistance over and above what was provided by the home health aide he prescribed while plaintiff was recovering from surgery. Moreover, plaintiff offered no evidence that she obtained prior written authorization from the Industrial Commission for these services.
20. After plaintiff's initial complaints of back pain immediately following the injury, there is no further mention of back complaints in the records until she is seen by Dr. Waivers on March 2, 2007. Dr. Busher, plaintiff's primary care physician testified that plaintiff never really brought up her knee or back as an issue. Dr. Busher also specifically testified that she did not initiate or recommend physical therapy for plaintiff's back.
21. During the course of his deposition, Dr. Waivers, a primary care physician who practices with Dr. Busher related plaintiff's back pain to altered gait. However, Dr. Waivers could not specify which knee surgery (left or right) caused the altered gait. Plaintiff testified that her low back started bothering her again in October or November of 2006, after the left knee surgery. When plaintiff saw Dr. Waivers on March 2, 2007, she did not mention anything to him about injuring her back at work in January 2006. Plaintiff was to return to see Dr. Busher within one to two weeks of March 2, 2007, but did not, and when she finally did return to see Dr. Busher on multiple occasions in April 2007, she never once mentioned any complaints regarding her back. Dr. Waivers testified that he would need to examine plaintiff again before making further recommendations regarding treatment of the back. *Page 10 
22. The Full Commission finds that what was originally diagnosed as a lumbar sprain from the accident on January 25, 2006 had resolved and complaints of back pain as of March 2, 2007 were unrelated to the January 2006 incident.
23. Plaintiff had long-standing, severe degenerative changes in the left knee for many years, which had required a left total knee replacement. Because of her weight, plaintiff was at an increased risk of the left total knee replacement failing. In fact, as of December 2004, x-rays documented aseptic loosening of the left knee component, which by January 2005 caused plaintiff daily pain in the left knee. Plaintiff required a left total knee revision prior to January 25, 2006, by virtue of the failure of the left knee component, and the greater weight of the evidence reveals that a revision of the left knee would have had to be done even without regard to the injury she sustained to her right knee on January 25, 2006.
24. Based on the greater weight of the competent evidence the Full Commission finds that neither the January 25, 2006 injury, nor the March 3, 2006 surgery, caused a permanent aggravation or progression of the underlying pathology in the left knee and therefore, plaintiff's left knee revision surgery was not a direct and natural result of the January 25, 2006 injury.
25. Following plaintiff's December 2003 right total knee replacement by Dr. Vaughn, plaintiff retained a 40 percent permanent partial disability to her right leg. As a result of the January 25, 2006 injury and revision surgery that was required on the right knee, plaintiff retains an additional 10 percent permanent partial disability to the right leg.
26. While plaintiff did initially complain of back pain following the January 25, 2006 injury, the competent, credible evidence of record does not support a finding that she requires further treatment for her back at this time. *Page 11 
27. Plaintiff's trip to Raleigh for the Functional Capacity Evaluation did not require an overnight stay.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 25, 2006, plaintiff sustained an admittedly compensable injury by accident to her right knee when a chair in which she was about to sit slid out from under her, causing her to fall back in a crab-like position. N.C. Gen. Stat. § 97-2(6).
2. As a result of her admittedly compensable injury by accident to her right knee, plaintiff is entitled to medical treatment that is necessary to effect a cure, provide relief or lessen her period of disability. N.C. Gen. Stat. § 97-25.
3. Plaintiff has failed to prove that her left knee revision surgery was a direct and natural result of the January 25, 2006 accident. Plaintiff's aggravation of preexisting symptoms, with no aggravation of the underlying condition is insufficient to establish a causal connection between the compensable injury and plaintiff's pre-existing and on-going left knee difficulties. Frazier v. McDonald's,149 N.C.App. 745, 562 S.E.2d 295 (2002); N.C. Gen. Stat. § 97-2(6).
4. As neither the January 25, 2006 injury, nor the March 3, 2006 surgery, caused a permanent aggravation or progression of the underlying pathology in the left knee, defendant is not responsible for medical expenses or disability associated with treatment of the left knee. N.C. Gen. Stat. §§ 97-2(6), 97-25.
5. Plaintiff has failed to prove that any current complaints regarding back pain are causally related to the January 25, 2006 accident, and therefore, defendants are not responsible *Page 12 
for payment of bills for physical therapy related to plaintiff's back pain. In addition, as there was no recommendation for a scooter until after plaintiff's left knee surgery, and there is no current medical recommendation, other than for use at work, defendant is not responsible for any expenses associated with providing plaintiff a scooter for recreational purposes. N.C. Gen. Stat. § 97-25.
6. In the absence of an overnight stay, plaintiff is not entitled to reimbursement for three meals on the date she came to Raleigh for the Functional Capacity Evaluation. See I.C. Form 25T and Fee Schedule.
7. Plaintiff retains a 10 percent permanent partial disability to her right leg as a result of the January 25, 2006 injury. N.C. Gen. Stat. § 97-31(15)
8. Defendant is not responsible for any expenses plaintiff might have incurred to pay family members to assist her with various household chores. Chapter 14 of the Industrial Commission Medical and Hospital Fee Schedules requires that the employee obtain prior written authority from the Industrial Commission. Moreover, plaintiff has failed to prove that these additional services, over and above what were provided by the home health aide Dr. Vaughn prescribed, were reasonable and necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff compensation for her 10% permanent partial disability rating to her right leg as a result of the January 25, 2006 injury. *Page 13 
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff, as a result of her admittedly compensable injury by accident to her right knee that is necessary to effect a cure, provide relief or lessen her period of disability. Future return-to-work issues shall be addressed by Dr. Pierce.
3. Plaintiff's claim for medical and indemnity compensation related to her left knee is denied.
4. Plaintiff's claim for reimbursement for amounts she may have paid family members to help her with various household chores is denied.
5. Plaintiff's request for medical treatment of her back is denied.
6. Plaintiff's request for reimbursement for three meals on the days she came to Raleigh for the Functional Capacity Evaluation is denied.
7. Each side shall pay its own costs.
This the 3rd day of March 2008.
S/_______________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_______________ BUCK LATTIMORE COMMISSIONER
 S/_______________ DANNY L. McDONALD COMMISSIONER
 *Page 1